IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

IVAN TORRES FIGUEROA, et al,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA,

    Defendant.

CIVIL NO. 13-1290 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

    Plaintiffs Iván Torres Figueroa (hereinafter "Torres"), his wife Rosa Fontán (hereinafter "Fontán") and their conjugal partnership, together with their minor children Brian ("Brian"), Verónica ("Verónica") and Rosa Nicole ("Rosa Nicole") Torres Fontán filed this civil action against the United States of America for damages that ensued after an arrest warrant was allegedly executed on their property, which resulted in their illegal detention. Plaintiffs filed a claim under the Federal Tort Claims Act ("FTCA") alleging damages to their property, as well as physical and emotional damages to themselves, particularly to their minor children, due to Defendant's actions.

    Plaintiffs allege that on October 6th, 2010, at approximately 3:00 a.m., they were awakened at their home by shouts, a loud explosion, sounds of breaking glass, and tear gas inside their house. FBI agents entered the house with weapons in hand and ordered Plaintiff Torres to lay on the floor with his hands behind his head and handcuffed him. The agents then took him half-dressed outside, where the agents restricted his ability to move freely and held him in custody in the street in front of his house. Plaintiffs allege that,

before Torres was taken outside, the FBI agents had already verified he was not the person they were looking for.

Upon hearing the commotion, Plaintiff Fontán placed their youngest daughter Rosa Nicole, age 4, inside the closet, after which the agents handcuffed her and took her outside, barefoot and wearing scant clothing. Minors Brian, age 13, and Verónica, age 11, were also suddenly awakened by all the noise and stepped out into the hall, where FBI agents shone lights and pointed weapons on them. When the agents saw they were children, they put down the weapons and escorted them out of the house; while doing so, the children had their hands up, were crying and in their pajamas. Rosa Nicole was later found hiding in the closet and was also taken outside the house.

Through the noise and mayhem, the minor children saw agents carrying firearms and assault rifles, at times even pointed at them. Once outside, they saw their parents Torres and Fontán handcuffed and half-dressed. Then, while Plaintiffs were detained outside the house, the agents searched their home, as neighbors watched them handcuffed and arrested in front of their home, in scant clothing, causing them shame and humiliation. During the FBI's search of their home, Plaintiffs aver the agents: 1) destroyed doors, windows and personal belongings; 2) emptied drawers and closets, spreading and damaging the contents through the rooms; 3) flipped and damaged beds and other furniture throughout the house; and 4) trashed supplies and equipment related to Plaintiff Fontán's business. After corroborating again Plaintiff Torres was not the person they were looking for, the agents removed their handcuffs and released them.

Plaintiffs allege that, in the haste of the moment, the agents attempted to serve the warrant on the wrong house. As a result of all the damages caused to Plaintiffs' home and property, Plaintiffs had to leave the house and stay with relatives until the repairs could be effected. Said situation disrupted the way Plaintiffs shared their life as a family, and further, has caused all Plaintiffs to undergo psychological and psychiatric treatment as a consequence of the trauma.

Before the Court now is Defendant's Motion Summary Judgment and Memorandum of Law in support thereof (Docket Nos. 41 and 41-1), Plaintiffs' opposition thereto (Docket No. 42) and Defendants' Reply (Docket No. 45). Defendant urges dismissal of the case on two (2) grounds: 1) that Plaintiffs' negligent investigation claim is barred by the discretionary function exception; and 2) the FBI agents acted reasonably and in good faith, therefore qualified immunity applies and the FTCA claims must be dismissed.

Plaintiffs in turn posit that: 1) Defendant's actions fall outside the purview of the discretionary function exception, and Defendant is therefore responsible for its negligent and unreasonable actions, and 2) under the FTCA, a cause of action can lie for illegal detention for the actions that occurred in this case, where Plaintiffs were taken and held outside their home, handcuffed and in their pajamas while the FBI negligently tried to execute an arrest warrant for a person who did not reside at their home, all while causing severe damage to their home in the process, and that Defendant's actions cannot therefore be considered reasonable.

Iván Torres Figueroa, et. al., v. United States of America, et. .al.
Civil No. 13-1290 (CVR)
Opinion and Order
Page 4

The Court agrees with Defendant that the present claims are barred by the discretionary function exception. Therefore, the Court lacks jurisdiction to entertain them, and therefore Defendant's Motion for Summary Judgment (Docket No. 41) is GRANTED.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23

F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir.2007); *see also*, Colón v. Infotech Aerospace Services, Inc., 869 F.Supp.2d 220, 225-226 (D. Puerto Rico 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is—and what is not—genuinely controverted.' " Hernández, 869 F.Supp.2d at 7 (*quoting* Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R.

Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

## FINDINGS OF FACT

Based on the parties' submissions, the Court makes the following findings of fact:[1]

1. On September 7, 2010, Angel R. Torres-Figueroa ("the subject")[2] and other individuals were indicted in a multi-count indictment in the District of Puerto Rico. The subject was charged with, among other things, attempting to possess, and conspiracy to attempt to possess, with intent to distribute, cocaine, and possessing a firearm in relation to a drug trafficking crime. (See, United States v. Angel Torres Figueroa, et al., Criminal No. 10-00310).

2. On September 7, 2010, arrest warrants were issued for the subject and other individuals who had been indicted. (See, D. Exhibit 1, Arrest Warrant for Torres).

3. Through its investigative efforts prior to attempting to arrest the subject, the FBI obtained information indicating that the subject's postal address was HC-02, Box 6449, Morovis, Puerto Rico 00687 and his physical address was Carr. 657, Ramal 5567, KM 2.4, Morovis, Puerto Rico 00687. This information included information from tax and Department of Motor Vehicle

---

[1] Any facts not properly controverted were deemed admitted pursuant to the Local Rules, if evidence sustaining them was found in the record.

[2] Angel R. Torres-Figueroa is the brother of Plaintiff Iván Torres-Figueroa.

Iván Torres Figueroa, et. al., v. United States of America, et. .al.
Civil No. 13-1290 (CVR)
Opinion and Order
Page 7

records. A National Comprehensive Report ("NCIC") records check provided several more addresses for the subject. (See, D. Exhibit 2, Puerto Rico Government tax record for Angel R. Torres-Figueroa; D. Exhibit 3, Puerto Rico Department of Motor Vehicles record for Angel R. Torres-Figueroa; D. Exhibit 4, and NCIC for Angel R. Torres-Figueroa).

4. The subject is the older brother of Plaintiff Torres. (P. Exhibit 5 - Deposition of Iván Torres-Figueroa, p. 30, l. 10).

5. On October 6, 2010, the subject was living with his girlfriend in Vega Baja. The house that he owns and previously lived in Morovis is located behind some foliage, a few hundred meters down the road from the Plaintiffs' house. In the past, the subject sometimes came to his previous residence during the day to take care of the roosters he kept there. The subject sometimes would come to the Plaintiffs' house to borrow their car. The subject's house is not immediately visible to a person standing or parked on the road in front of Plaintiffs' house, because it is located 500 to 600 feet further down the road and outside the fenced property where Plaintiffs' house is located. (D. Exhibit 6: Deposition of Iván Torres-Figueroa, pp. 16 -18; pp. 20- 22; p. 24, l. 4-11, P. 121, l. 10).

6. The subject, Plaintiffs and others in the neighborhood used the same postal address and received their mail in the same mailbox. The mailbox has "HC 2, BOX 6449" written on the front of it, is located in front of Plaintiffs' home and is closer to Plaintiffs' house than any other house in the immediate

Case 3:13-cv-01290-CVR   Document 46   Filed 12/04/14   Page 8 of 17

Iván Torres Figueroa, et. al., v. United States of America, et. .al.
Civil No. 13-1290 (CVR)
Opinion and Order
Page 8

vicinity. (D. Exhibit 7: Deposition of Iván Torres-Figueroa, p. 60, l. 17 – p. 61, l. 5; Deposition of Verónica Isabel Torres-Fontán, p. 57, l. 15-178; Deposition of Brian Torres-Fontán, p. 25, ll. 14 – 21; p. 27, ll. 3-22).

7. On October 6, 2010, at 3:00 a.m., FBI personnel and Puerto Rico Police Department Task Force Officers attempted to execute the arrest warrant on the subject. (D. Exhibit 8: Administrative Claim cover letter dated August 17, 2012, from Plaintiff's counsel to FBI Director Robert Mueller, and 2).

8. Plaintiff Torres was awakened on October 6, 2010 by two loud shouts saying "FBI" at approximately 3:00 a.m. (D. Exhibit 9: "Incident Statement" attached to Plaintiffs' administrative claim, p. 1, and 2).

9. Plaintiff Torres' mother was awakened at approximately 3:00 a.m. on October 6, 2010, by the rotating flashing lights of the many FBI/police cars around her son Iván's house, as well as by the noise her dogs and calf were making. (D. Exhibit 10, Deposition of Aurora Figueroa, p. 21, l. 7 – p. 23, l. 4).

10. FBI agents entered Plaintiffs' residence while setting off two objects that each made a loud bang and let off a lot of smoke. In the process, they caused damages to Plaintiffs' home. (D. Exhibit 13, p. 82, l. 1 – p. 83, l. 15; P. Exhibit 14, Rosa Fontán Deposition, p. 54, l. 20; P. 55; P. Exhibit 13, p. 10, l. 10-25).

11. Plaintiff Torres exited his bedroom and was confronted by FBI personnel. Pointing weapons at him, they ordered him to "hit the floor." Plaintiff complied and he was handcuffed and escorted out of the house. (D. Exhibit

12, Deposition of Iván Torres-Figueroa, p. 77, l. 23 – p. 78, l. 6; p. 83, l. 16 – p. 84, l. 7, p. 86, l. 17 – p. 87, l. 11).

12. FBI agents corroborated Plaintiff Torres was not the subject, and he was handcuffed and escorted outside his home. (P. Exhibit 4, Transcription on arrest of Angel Torres-Figueroa (FD302) prepared by Special Agent David Kinkaid, p.2, ¶ 4; P. Exhibit 15, Deposition of Iván Torres Figueroa, p.77, l.23 – p.80, l. 6).

13. As Plaintiff Torres exited the bedroom, Plaintiff Fontán, picked up their four year-old daughter Rosa Nicole, who was in her parents' bed, and ran across the dark, smoke-filled room and hid in a closet. One of the FBI agents saw her, and with a translator, went to the closet and shone a flashlight on her. Pointing weapons at her, they told her to exit the closet. The agents had not seen her daughter, so Fontán told her to stay in the closet. Plaintiff Fontán then exited the closet, was handcuffed and escorted out of the house by the agents. (D. Exhibit 13, Deposition of Rosa Fontán-Torres, p. 42-43; p. 45, l. 23; pp. 47-48; pp. 50-51).

14. While Fontán was being handcuffed, her other two children, Verónica (approximately 11 years old) and Brian (approximately 14 years old) were standing in the doorway of their dark bedrooms. As the FBI agents approached them, the agents shone flashlights on them. As soon as the agents saw they were children, they put their weapons down. The agents then told them to put their hands up and they were escorted out of the house along

Iván Torres Figueroa, et. al., v. United States of America, et. .al.
Civil No. 13-1290 (CVR)
Opinion and Order
Page 10

with their mother. (D. Exhibit 14, Deposition of Verónica Torres-Fontán, p. 14-l. 18 – p. 16, l. 11; p. 17, l. 10-25; Deposition of Brian Torres-Fontán, p. 12, l. 1 – p. 13, l. 11).

15. Plaintiff Fontán and the two older children were brought to the side of the road, approximately 4-5 car lengths away from where Plaintiff Torres was being held. Plaintiff Torres then told one of the FBI agents that one of his children was missing. Two of the agents went back into the house to look for Rosa Nicole. After a few minutes, the female agent carried Rosa Nicole out of the house and brought her directly to her mother. (D. Exhibit 15, Deposition of Iván Torres-Figueroa, pp. 90-94).

16. Verónica and Rosa Nicole (later carried outside by an agent) were escorted in their pajamas outside the house by FBI agents. (P. Exhibit 24: Deposition of Aurora Figueroa p.8, l.10 – 19). Before being handcuffed, Rosa Fontán covered herself with a shirt while inside the house (P. Exhibit 25: Deposition of Rosa Fontán, p. 50, l. 3-6).

17. While being escorted outside the house, minor Plaintiffs Brian, Verónica and Rosa Nicole Torres were crying. (P. Exhibit 20: Deposition of Iván Torres Figueroa, p.90, l.3; P. Exhibit 21: Deposition of Brian Torres Fontán p. 15, l.15-24).

18. When minor Plaintiff Brian was escorted outside the house, Brian was shirtless. (P. Exhibit 23:Deposition of Brian Torres Fontán. p. 13, l.9-11).

Iván Torres Figueroa, et. al., v. United States of America, et. .al.
Civil No. 13-1290 (CVR)
Opinion and Order
Page 11

19. According to the 302 Report, even after the FBI realized that Plaintiff Torres was not the subject, he was still handcuffed and escorted outside the house. (P. Exhibit 4, Transcription on arrest of Angel Torres-Figueroa (FD302) prepared by Special Agent David Kinkaid, p.2 -3).

20. Plaintiff Torres' brother, Orlando Torres-Figueroa then came out and asked the FBI agents who they were looking for. The agents told him they were looking for the subject (Angel Torres-Figueroa). Orlando Torres-Figueroa then informed them that Plaintiff Torres was not the subject. The agents then spoke to someone on the phone and then removed the adult Plaintiffs' handcuffs. They had been handcuffed for approximately 15-20 minutes. (D. Exhibit 16, Deposition of Iván Torres-Figueroa, p. 94, p. 96.

21. Orlando Torres-Figueroa then led the FBI agents over to the subject's house. The agents surrounded the house. They called out for the subject several times but determined he was not in the house. However, at some point, another target of the FBI investigation, Carlos Figueroa, Plaintiff Torres' uncle, was arrested on the road outside Plaintiffs' house. (D. Exhibit 17, Deposition of Iván Torres-Figueroa, p. 99-101).

22. During the events of October 6, 2010, the FBI agents did not show the Plaintiffs an arrest warrant. (P. Exhibit 22: Deposition of Iván Torres Figueroa, p.20 l. 1 -10).

23. On October 6, 2010, Plaintiffs took some photographs of the damage that was done to their house when the FBI personnel attempted to execute the arrest

Iván Torres Figueroa, et. al., v. United States of America, et. .al.
Civil No. 13-1290 (CVR)
Opinion and Order
Page 12

        warrant for Angel Torres-Figueroa, and submitted them to the FBI along with their administrative claims. (D. Exhibit 18, copies of photographs submitted by Plaintiffs to the FBI; D. Exhibit 19, Deposition of Iván Torres-Figueroa, pp. 107- 108).

24.   Later the same day (October 6, 2010), at approximately 8:45 a.m., the subject was arrested by FBI personnel, without incident, at his place of employment in Toa Baja, Puerto Rico.³

25.   On August 17, 2012, Plaintiffs filed their administrative claims with the agency. (D Exhibit 21: Copies of Plaintiffs' administrative claims forms).

26.   On April 12, 2013, the Plaintiffs filed their Complaint in the present lawsuit. Plaintiffs Torres and Fontán filed suit on behalf of themselves and their three minor children. The lawsuit assert claims under the FTCA. (Docket No. 1).

## LEGAL ANALYSIS

**A.    The Discretionary Function Exception.**

As has been well established, the FTCA is a limited waiver of the government's sovereign immunity for certain torts committed by its employees in the scope of their employment. See 28 U.S.C. § 1346(b) & § 2680. It bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion

---

³ In April of 2011, the subject pled guilty to a count of conspiracy to possess, with intent to distribute, cocaine, as well as a count of possessing a firearm in relation to a drug trafficking offense. In September 2011, the subject was sentenced to, among other things, a term of imprisonment of 168 months. The subject appealed. In September 2012, the Court of Appeals for the First Circuit affirmed the subject's conviction and sentence. See, United States v. Angel Torres Figueroa, No. 11-2302 (1st Cir.).

Iván Torres Figueroa, et. al., v. United States of America, et. .al.
Civil No. 13-1290 (CVR)
Opinion and Order
Page 13

involved be abused." See 28 U.S.C. § 2680(a). The narrowing adjective "limited" is necessary because there are a number of situations in which the waiver will not attach. Should one of the exceptions apply, however, the Court lacks subject-matter jurisdiction over the claim. See Muñiz-Rivera v. United States, 326 F.3d 8, 12 (1st Cir. 2003).

The Court of Appeals for the First Circuit recently reiterated the analysis that it has to perform in a case involving this particular exception. The Court repeats it here.

> A court must first zero in on the conduct that supposedly caused the harm. See, e.g., Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009). Next the court must ask whether the harm-producing conduct itself is discretionary, knowing that when a "statute, regulation, or policy" actually dictates "a course of action," the agent has no choice but to follow the "directive." Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *accord* Fothergill, 566 F.3d at 253 (also adding that "[i]n carving out the discretionary function exception, Congress wanted to prevent courts from second-guessing legislative and administrative decisionmaking"). If the conduct does involve choice, then the court must ask "whether the exercise or non-exercise of the granted discretion is actually or potentially" affected by policy-related judgments. Fothergill, 566 F.3d at 252 (*citing* Bolduc and Shansky). Of course the law presumes that discretionary acts involve policy judgments. See, e.g., Bolduc, 402 F.3d at 62 (*citing*, among other cases, United States v. Gaubert, 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). Anyway, "yes" answers to both questions mean the discretionary-function exception holds sway and sovereign immunity blocks the litigation. But a "no" answer to either question means the exception does not apply and the suit may continue." Mahon v. United States, 742 F.3d 11, 14 (1st Cir. 2014).

In the present case, the conduct complained of was the negligent execution of the arrest warrant. As stated above, however, government conduct does not involve an element

of judgment or choice if there is a statute, regulation, or policy that requires the employee to follow a specific course of action. United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273 (1991); Ochran v. United States, 117 F.3d 495 at 499. Plaintiffs have failed to allege any conduct by the agents that could reasonably be expected to be contrary to any guideline. The question then becomes if the conduct complained of involved an element of choice. That is easily answered – although law enforcement agents have a duty to maintain law and order, how best to fulfill that duty is within the discretion of the officers. Redmond v. United States, 518 F.2d 811, 816-17 (7th Cir. 1975); United States v. Faneca, 332 F.2d 872, 875 (5th Cir. 1964). Decisions such as whether, when and how to prosecute a person are generally considered to be discretionary with the agency. Blessing v. United States, 447 F.Supp. 1160, 1179 n. 28 (E.D.Pa. 1978); Bernitsky v. United States, 620 F.2d 948, 955 (3d Cir. 1980) (decisions of Mine Enforcement and Safety Administration officers as to investigation and enforcement are discretionary.)

      Having established that the conduct at issue involves choice, the Court turns to the next question: is the discretion policy driven? Because the conduct of a government agency or employee is not immune from scrutiny as a "discretionary function" simply because it involves an element of choice – it must be a choice rooted in social, economic or political policy. Berkovitz by Berkovitz v. U.S., 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) (*quoting* United States v. Varig Airlines, 467 U.S., at 820, 104 S.Ct., at 2767-2768 (1984) and Arizona Maintenance Co. v. United States, 864 F.2d 1497 (9th Cir. 1989)). The Court finds that the decisions made and actions taken by the officers in the instant case in the

course of serving the warrant were clearly based on considerations rooted in economic, social, or political policy.

In the case of Mesa v. United States, 123 F.3d 1435 (11th Cir. 1997), the Court of Appeals for the Eleventh Circuit had the opportunity to examine a case with strikingly similar facts to those presented in the case at bar. The plaintiff in Mesa brought a claim under the FTCA against agents from the Drug Enforcement Administration ("DEA") who arrested him in a case of mistaken identity, alleging negligence and recklessness in the service of an arrest warrant. Plaintiff Mesa claimed the DEA agents were negligent and reckless in their investigation of the whereabouts of the person named in the arrest warrant, who had his same name. Plaintiffs Mesa asserted the DEA's negligence and recklessness caused defendants to execute the arrest warrant on the wrong person, and this mistake caused them substantial injuries. Defendants' argument was that the DEA agents were performing a classic law enforcement discretionary function when they executed the arrest warrant on Plaintiff. The Court dismissed the case for lack of subject matter jurisdiction due to the discretionary function exception, and the Court of Appeals affirmed the dismissal.

In so holding, the Court of Appeals stated that: "[w]e readily conclude that the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice", and that all of those actions were grounded in considerations of public policy. Mesa, 123 F.3d at 1438. The Mesa court found, for example, that deciding how extensively to investigate the location and

identity of the subject, the urgency of apprehending the subject, the potential threat the subject posed to public safety, the likelihood that the subject could destroy evidence, the desire to keep the investigation secret, and the proper allocation of available resources were all fundamentally rooted in policy considerations.

Other courts, including this district and the First Circuit, have likewise so found. See, Horta v. Sullivan, 4 F.3d 2, 21 (1st Cir.1993) (decisions as to how law enforcement agents enforce the law are protected by the discretionary function exception); Torres-Dueño v. U.S., 165 F.Supp.2d 71 (D.P.R. 2001) (claims of excessive show of force were barred by the discretionary function exception); Flax v. United States, 847 F.Supp. 1183, 1191 (D.N.J. 1994) (agents' decision regarding how to apprehend alleged perpetrators was protected by discretionary function exception); Amato v. United States, 549 F.Supp. 863, 866-67 (D.N.J. 1982) (decision of when and how to arrest perpetrators was a discretionary function), *aff'd*, 729 F.2d 1445 (3rd Cir.1984) (Unpublished table case); Shuler v. United States, 448 F.Supp.2d 13,19 (D.C. Cir. 2006)(decision regarding when to arrest a suspect was "of the kind the discretionary function exception was designed to shield").

The same analysis applies here. Although the Court sympathizes with Plaintiffs, as the Court of Appeals for the First Circuit recently stated, "hard as our sympathies may pull us, our duty to maintain the integrity of the substantive law pulls harder." Mahon, 742 F.3d at 16 (*quoting* Medina-Rivera v. MVM, Inc., 713 F.3d 132, 138 (1st Cir. 2013) and Turner v. Atl. Coast Line R.R. Co., 292 F.2d 586, 589 (5th Cir. 1961)). The conduct complained of by Plaintiffs in the present case is precisely the kind that other courts have found to be protected by the discretionary function exception. The Court therefore finds the

discretionary function exception applies to the facts of the present case and accordingly, GRANTS Defendant's Motion for Summary Judgment for lack of subject matter jurisdiction. The Court does not reach the issue of qualified immunity raised by Defendant, insofar as it has disposed of the totality of this case via the preceding analysis.

## CONCLUSION

For the reasons above stated, Defendant's Motion for Summary Judgment (Docket No. 41) is GRANTED and all of Plaintiffs' claims are dismissed with prejudice.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 4th day of December, 2014.

                                              S/CAMILLE L. VELEZ-RIVE
                                              CAMILLE L. VELEZ RIVE
                                              UNITED STATES MAGISTRATE JUDGE